UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | Cr. No. 13-10061-MLW |
| | ) | |
| JOHN A. PICINI, | ) | |
|     Defendant. | ) | |
| | ) | |

MEMORANDUM AND ORDER

WOLF, D.J.                                                  May 1, 2020

I.   INTRODUCTION

    Defendant  John  A.  Picini  pled  guilty  to  an  information
charging  him  with  five  counts  of  mail  fraud  and  three  counts  of
tax  evasion  on  April  1,  2013.  See  Docket  No.  35.  On  November  7,
2013,  he  was  sentenced  to  121  months  in  custody,  three  years  of
supervised  release,  restitution  in  the  amount  of  $3,536,604.87,
and  a  special  assessment  of  $800.  See  Docket  No.  46.

    Picini  has  filed  a  petition  to  vacate  his  conviction  under  28
U.S.C.  §2255,  arguing  that  his  counsel  was  ineffective  for  failing
to  oppose  or  succeed  in  opposing  the  application  of  several
Guidelines  enhancements  at  sentencing  (the  "Motion").   For  the
reasons  explained  in  this  Memorandum,  the  Motion  is  being  denied.

II.   BACKGROUND

Picini was the owner of a business called the Center for Senior Financial Planning ("CFSFP"). See PSR ¶8. He represented CFSFP as providing various financial planning services aimed at senior citizen investors, including estate planning, long-term care planning, tax preparation, IRS/pension distribution planning, and 401k rollover planning. See id. Beginning in 2006, Picini advised his clients to liquidate their retirement funds and reinvest this money with him in various investment accounts. See PSR ¶9.

However, Picini never invested this money, but instead spent it on himself. To maintain this fraud, Picini periodically issued false account statements to his clients purporting to represent their investment balance, when in reality he had already spent their money. See id. at ¶10. Picini also charged his clients thousands of dollars in fraudulent fees purportedly for investments and other services. See id. ¶11. In total, Picini caused over $3,500,000 in losses to 70 victims between 2006 and 2012. See id. ¶12. Picini also engaged in tax evasion by failing to report almost all of his income to the Internal Revenue Service ("IRS") from 2008 to 2010. See id. ¶13.

Picini waived indictment and was charged by Information with five counts of mail fraud and three counts of tax evasion. See Docket No. 28. Picini pled guilty to all charges pursuant to a

2

plea agreement. See Plea Agreement (Docket No. 30). In his plea
agreement, Picini retained the right to object to certain
Guidelines calculations. See id. at ¶3. In particular, Picini
retained the right to assert that the 4-level investment-adviser
enhancement, U.S.S.G. §2B1.1(b)(18)(A)(iii), was not applicable.[1]
Picini also retained the right to argue that the 16-level
enhancement for losses between $1,000,000 and $2,500,000 applied
rather than the 18-level enhancement for losses over $2,500,000,
see U.S.S.G. §2B1.1(b)(1)(J)), and that the 2-level enhancement
for 10 to 50 victims applied rather than the 4-level enhancement
for 50 or more victims, see U.S.S.G. §2B1.1(b)(2)(B)), applied.
See id.

On November 7, 2013, Picini was sentenced by Judge Joseph
Tauro to 121 months in custody, three years of supervised release,
restitution in the amount of $3,536,604.87, $490,279 payable to
the IRS, and a special assessment of $800. See Docket No. 46. As
reflected in the Judgment, the court adopted the Guidelines
calculations set forth in the Presentence Report ("PSR"),
including the 4-level investment adviser enhancement, the 18-level
enhancement for a loss of over $2,500,000, and the 4-level
enhancement for 50 or more victims. See Judgment (Docket No. 48).

---

[1] All U.S.S.G. citations are to the then-applicable 2012
Guidelines Manual.

Picini filed an appeal to the First Circuit, which was summarily denied on June 25, 2015. See Docket No. 66 (First Circuit Judgment).

Picini, pro se, filed a Motion to Vacate Under 28 U.S.C. §2255 and memorandum in support on September 28, 2016. See Docket Nos. 68, 69. On October 28, 2016, Picini filed a slightly expanded version of the memorandum in support. See Docket No. 73. Picini then filed an amended Motion to Vacate on November 7, 2016. See Docket No. 75.[2]

On June 28, 2019, the court realized that the Motion may not have been served on the government. Accordingly, the court ordered that the Motion be served and that the government respond. See Docket No. 78. On September 11, 2019, the government filed a memorandum in opposition to the Motion. See Docket No. 84. Picini filed a Reply to the government's opposition on November 26, 2019. See Docket No. 89.

III. LEGAL STANDARDS

When a prisoner files a petition under 28 U.S.C. §2255, the court may either summarily dismiss the claim or grant an

---

[2] It appears that Picini intends that this amended Motion to Vacate supplement rather than replace his existing Motion to Vacate filings. See Petitioner's Reply (Docket No. 89) at 1. Therefore, the court is construing all of these filings as Picini's §2255 Motion.

4

evidentiary hearing to determine if it is meritorious. 28 U.S.C.

Section 2255(b) provides that:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

The First Circuit explained the test for granting an

evidentiary hearing in a §2255 proceeding in <u>United States v.</u>

<u>McGill</u>, 11 F.3d 223 (1st Cir. 1993). As the First Circuit wrote:

> When a petition is brought under section 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. <u>See</u> <u>Mack v. United States</u>, 635 F.2d 20, 26-27 (1st Cir. 1980); <u>United States v. DiCarlo</u>, 575 F.2d 952, 954 (1st Cir. [1978]), <u>cert.</u> <u>denied</u>, 439 U.S. 834 (1978). In determining whether the petitioner has carried the devoir of persuasion in this respect, the court must take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets.
>
> We have distilled these principles into a rule that holds a hearing to be unnecessary "when a §2255 Petition (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and records of the case." <u>Moran v. Hogan</u>, 494 F.2d 1220, 1222 (1st Cir. 1974). In other words, a "§2255 Petition may be denied without a hearing as to those allegations which, if accepted as true, entitle the movant to no relief, or which need not be accepted as true because they state

> conclusions instead of facts, contradict the
> record, or are 'inherently incredible.'"
> Shraiar v. United States, 736 F.2d 817, 818
> (1st Cir. 1984) (citations omitted).

Id. at 225-26 (some citations omitted); see also United States v. Panitz, 907 F.2d 1267 (1st Cir. 1990).

Where, as here, a petitioner is acting pro se, his petition must be "liberally construed . . . [and] a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Although the court must liberally construe pro se pleadings, "it cannot create a claim where none has been properly pleaded." Brooks v. JPMorgan Chase Bank, N.A., No. CIV.A. 12-11634-FDS, 2013 WL 3786448, at *3 (D. Mass. July 17, 2013).

IV. DISCUSSION

The court has liberally construed Picini's §2255 pleadings. Picini appears to argue primarily that his counsel, William Fick, was ineffective because he failed to oppose the four-level investment adviser sentencing enhancement under U.S.S.G. §2B1.1(b)(18)(A)(iii). See Docket No. 75 at 1; PSR at 8. Essentially, Picini argues that Fick should have made the argument that this enhancement was inapplicable because Picini did not meet the definition of an "investment advisor" and his offense did not involve "securities" as defined in the Guidelines. See Docket No.

6

75 at 4. Picini claims that this argument is supported by an affidavit submitted by Postal Inspector Frederick Busch in applying for a complaint. See Docket No. 26-1.[3] Although also submitted with the government's sentencing memorandum (Docket No. 45), Picini claims that he was not provided with this affidavit and characterizes it as "newly discovered evidence" throughout his filings. See Docket No. 73 at 19. Picini also contends that Fick was ineffective for failing to object successfully to the two-level enhancement for loss amounts exceeding $2,500,000 under U.S.S.G. 2B1.1(b)(1)(J), and the two-level enhancement for more than 50 victims under U.S.S.G. 2B1.1(b)(2)(B). See Picini Reply at 7.

The government concedes that Picini's §2255 petition is timely, but asserts that it is unmeritorious. See Docket No. 84 at 2-3. For the reasons explained below, a hearing is not justified and all of Picini's grounds for relief are indeed without merit.

A. Ineffective Assistance of Counsel

"To succeed on a claim of ineffective assistance of counsel under the Sixth Amendment, [a movant] must show both deficient performance by counsel and resulting prejudice." Peralta v. United States, 597 F.3d 74, 79 (1st Cir. 2010) (citing Strickland v.

---

[3] A prior version of the Busch affidavit was attached to the complaint. See Docket No. 26-1.

Washington, 466 U.S. 668, 687); see Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996). "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697. "The burden is on the petitioner to demonstrate ineffective assistance by a preponderance of the evidence." Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993).

"In order to satisfy the 'deficient performance' prong, [a movant] must show that his trial counsel's representation 'fell below an objective standard of reasonableness.'" Peralta, 597 F.3d at 79 (quoting Strickland, 466 U.S. at 688). The court must determine "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge in a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." Strickland, 466 U.S. at 690.

As to the second prong, "[u]nder Strickland, a defendant is prejudiced by his counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"

Porter v. McCollum, 558 U.S. 30, 40 (2009) (quoting Strickland, 446 U.S. at 694).

    B. Ground One

    As indicated earlier, Picini claims that Fick was ineffective because he failed to argue that the four-level investment adviser sentencing enhancement under U.S.S.G. §2B1.1(b)(18)(A)(iii) was inapplicable.  See  Docket  No.  75  at  14.  U.S.S.G. §2B1.1(b)(18)(A)(iii) provides, in relevant part, for a four-level guidelines enhancement if the offense involved "a violation of securities law and, at the time of the offense, the defendant was . . . an investment adviser." Essentially, Picini claims that this provision does not apply to him because his fraud was limited to the purchase and sale of fixed-rate annuities, which he claims do not fall under the regulation of "securities laws," and that he did not meet the definition of an "investment adviser". See Docket No. 73 at 3.

    This claim is unmeritorious because Fick's decision not to make this argument was not objectively unreasonable.  Moreover, Picini was not prejudiced because it was not made.

    The  First  Circuit  rejected  Picini's  argument  that  the enhancement did not apply on direct review, undercutting any argument  that  Fick's  failure  to  raise  this  objection  was unreasonable. See United States v. Picini, No. 13-2424, Judgment (Docket No. 66). The First Circuit found that "the record supports

a finding that 'the offense involved [] (A) a violation of securities law and, at the time of the offense, the defendant was . . . (iii) an investment adviser,' warranting application of the 'investment adviser' enhancement under the U.S. Sentencing Guidelines." United States v. Picini, No. 13-2424, Judgment (2015) (citing U.S.S.G. §2B1.1(b)(20)(A)(iii)). Although reviewed under the deferential "plain error" standard because Picini did not object to this enhancement at sentencing, the First Circuit's summary rejection of Picini's argument that the enhancement did not apply demonstrates that Fick's decision not to pursue this argument was reasonable and that Picini was not prejudiced by that decision. See Strickland, 466 U.S. at 687-88; see also United States v. Adorno-Molina, 774 F.3d 116, 125 (1st Cir. 2014) ("Because [defendant] did not raise these sentencing challenges in the district court, we review for plain error.").

Nevertheless, the court has considered Picini's arguments and finds that the objection Picini advocates would have been denied because of the Guidelines' broad definitions of "securities law" and "investment adviser," and the conduct Picini admitted to. Specifically, the sentencing enhancement under U.S.S.G. §2B1.1(b)(18)(A)(iii) defines "securities law" as any of the provisions of law referred to in 15 U.S.C. § 78c(a)(47), including "the rules, regulations, and orders issued by the Securities and Exchange Commission pursuant to the provisions of law referred to

10

in such section." U.S.S.G. §2B1.1(b), Application Note 14(A). This includes both the Securities Act of 1933, 15 U.S.C. §77a et seq., and the Securities Exchange Act of 1934, 15 U.S.C. §78a et seq., as well as regulations promulgated by the Securities and Exchange Commission under these provisions. It is not required that a defendant be convicted under one of these securities laws for the enhancement to apply. See U.S.S.G. §2B1.1(b), Application Note 14(B). Rather, the enhancement is applicable to a defendant convicted under a general fraud statute if the defendant's conduct would also violate a securities law. See id.

At his Rule 11 hearing, Picini agreed with the government's summary of the evidence. Among other things, the government stated that Picini represented that he "advised various clients to liquidate[] retirement funds, invest[ed] in annuities or other tax-deferred investment vehicles, and to reinvest these funds in purported accounts supposedly managed by the defendant." See Apr. 1, 2013 Tr. (Docket No. 56) at 10. This demonstrates that the existing investments that Picini induced his clients to liquidate were not limited to fixed-rate annuities. Picini also advised his victims that the accounts in which he was purportedly investing their money offered higher rates of return than traditional fixed-rate annuities. See, e.g., Complaint Affidavit (Docket No. 3-1) at ¶10(c)(3). Therefore, Picini's conduct also violated 15 U.S.C. §78j and 17 C.F.R. §240.10b-5, which prohibit the use of

11

"manipulative or deceptive devices" in connection with the purchase or sale of securities.

Picini also fit the Guideline's definition of an "investment adviser". The Guidelines give the term "investment adviser" the same meaning as in 15 U.S.C. §80b-2(a)(11). See U.S.S.G. §2B1.1(b), Application Note 14(A). 15 U.S.C. §80b-2(a)(11) defines this term as:

> "any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities."

As explained earlier, Picini admitted that he advised his victims to liquidate existing investments which were not limited to fixed-rate annuities. He also purported to be investing his victims' money in accounts with qualities not offered by traditional fix-rate annuities. In addition, Picini was a registered investment adviser in Massachusetts from 2005 until 2010. See Complaint, Affidavit (Docket No. 3-1) at ¶6.

In view of the conduct Picini admitted and the scope of the enhancements, any argument that Picini had not violated any "securities law" or did not qualify as an "investment adviser" would not have been meritorious. Because the claim that this enhancement was not applicable fails on the merits, Picini's

"related claims that counsel rendered ineffective assistance in failing to press the claim[]" is unmeritorious. <u>Tse v. United States</u>, 290 F.3d 462, 465 (1st Cir. 2002).

In addition, as explained below, Fick made detailed objections to the application of other sentencing enhancements. He sought a downward departure on the grounds that Picini's health was poor and that the fraud sentencing guidelines provide for excessive sentences. <u>See</u> PSR Objections at 22-23; Def. Sent. Mem. at 5-9. Even if there was a plausible argument that the investment adviser enhancement was not applicable, the court would not find Fick's decision to focus his efforts on these other arguments to be objectively unreasonable because "[i]t is the very function of an effective legal counselor to select among the available arguments and raise only 'the most promising issues for review.'" <u>Weingarten v. United States</u>, 865 F.3d 48, 53 (2d Cir. 2017) (quoting <u>Jones v. Barnes</u>, 463 U.S. 745, 753-54 (1983)).

Accordingly, Ground One is being dismissed.

C. <u>Other Grounds</u>

Picini also contends for the first time in his reply brief that Fick was ineffective for failing to object successfully to the two-level enhancement for loss amounts exceeding $2,500,000, U.S.S.G. 2B1.1(b)(1)(J), and the two-level enhancement for more than 50 victims, U.S.S.G. 2B1.1(b)(2)(B). <u>See</u> Picini Reply at 7,

§29. Picini notes that the government did not respond to these contentions in its opposition.

However, neither of these grounds was properly or adequately raised Picini. Like other civil litigants, habeas petitioners may not raise grounds for relief for the first time in a reply brief. More specifically, as the First Circuit wrote in United States v. Barrett, 178 F.3d 34, 57 (1st Cir. 1999), "[a] first petition for post-conviction relief under §2255 should raise all available claims. Informal reference to a new claim in a reply brief will not suffice to raise a claim if the district court does not address that claim in its order."

While the court has construed Picini's pro se petition liberally, there is no mention in any of Picini's submissions before his Reply of the claim that his counsel was ineffective for failing to object to or investigate the two-level enhancement for loss exceeding $2,500,000. The only mention of this enhancement is a quotation from Picini's plea agreement indicating to which Picini reserved the right to object. See Docket No. 69 at 3.

Picini similarly mentions the 50-or-more victim enhancement only once in his submissions:

> "In addition, based on the newly discovered
> evidence, the Busch affidavit, the enhancement
> for more than Fifty (50) victims under USSG
> 2B1.1(b)(1) was not applicable as the
> affidavit makes clear, that there is a
> conflict on the number of victims, without

14

> resolution, challenging the veracity of the
> final Judgment."

Docket No. 68 at 2-3. Picini does not elaborate on what this "conflict" is, or argue that there was any basis for his counsel to believe that a reasonable investigation may have revealed that there were fewer than 50 victims. Nor does Picini offer any factual support to his contention that these enhancements did not apply. Rather, he appears to suggest in a conclusory fashion that Fick should have conducted a thorough investigation because it might have revealed that the claimed victim and loss amounts were inaccurate because the government had interviewed only a sample of victims. See Docket No. 89 at ¶25. As discussed earlier, in deciding whether to grant an evidentiary hearing in a §2255 proceeding, the court "need not give weight to conclusory allegations" such as these. McGill, 11 F.3d at 225-26; see also United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

In any event, these claims are not meritorious because Fick objected to both of these enhancements. The PSR found that Picini was accountable for a loss of $3,536,604.87, attributable to 70 victims, as set forth in a table detailing each victim's losses. See PSR at ¶12. Fick objected that the loss and victim calculations in the PSR were based on insufficiently reliable data and,

therefore, did not support the application of these higher
enhancement levels. See id. at 22. He asserted that there were
errors in this data based on his review and investigation: (1) one
of the purported victims was actually someone who had legitimately
purchased a used car from Picini; (2) the government did not credit
Picini for some disbursements made to clients reflected in his
bank records; (3) some victims had claimed loss amounts different
from the government-calculated loss amounts; (4) the loss table
included fees paid to Picini for legitimate tax and advisory
services; and (5) the government only spoke to a sample of the
purported victims and did not share reports of those interviews
with the defense, so it was impossible to verify if all of the
listed persons were in fact victims. See id. at 22-23. In response
to these objections, Probation revised its calculations in the PSR
but did not change its position that the higher enhancement levels
applied. See id. at 23. The objections also prompted the government
to file an affidavit providing a detailed explanation of its
methodology and a revised summary of losses. See Affidavit of
Frederick T. Busch (Docket No. 45-1).

Fick argued that the government had not satisfied its burden
to prove that these enhancements were applicable, but that there
was no way for him to investigate whether all of the transactions
were properly listed. See PSR at 22-24. He also discussed this
objection at length at the sentencing hearing, but the court

16

ultimately adopted the PSR's guidelines calculations. See Nov. 7, 2013 Tr. at 14-16, 26.

Extensive time and resources that would have been required to conduct an even more thorough investigation of the victim spreadsheet. It is unlikely such an investigation would have demonstrated that 20 victims or $1,000,000 in losses were improperly counted, as would have been required to move to the next lower enhancement levels. In view of this, Fick's decision to argue instead that the government had not borne its burden of proof was reasonable. Therefore, Picini's untimely contentions are unmeritorious.

V.   MOTION TO CORRECT/AMEND JUDGMENT

Picini has also filed two motions requesting that the court correct or amend the judgment to specify that payment of the restitution ordered be deferred until after Picini's release from custody. See Docket Nos. 62, 64. Contrary to Picini's assertion, however, the Judgment is not silent as to when Picini's restitution payment is due. Rather, the judgment states that "[u]nless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment." Judgment (Docket No. 48) at 6. There is no reason to revisit this requirement. Therefore, Picini's obligation is due now, subject to a payment plan developed through the Federal Bureau

17

of Prisons' Inmate Financial Responsibility Program during the period of his incarceration. See 28 C.F.R. §545.11.

VI.  CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the court must "issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant." To receive a COA, a petition must make a "substantial showing of a denial of a constitutional right." See 28 U.S.C. §2253(c)(2). In other words, a COA is warranted if "'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). A claim can be debatable "even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." Id.

Dismissal of Picini's Motion is "a final order adverse to the applicant." §2255 Rule 11(a). However, the court finds that no reasonable jurist would conclude that Fick's conduct constituted constitutionally ineffective assistance of counsel. Accordingly, the court is denying a COA.

VII. ORDER

In view of the foregoing, it is hereby ORDERED that:

1. Picini's Motion to Vacate (Docket Nos. 68, 70, 75) is

18

DENIED.

2.  The Motion to Expand the Record (Docket No. 71) is ALLOWED.

3.  The Motion for Leave to Proceed In Forma Pauperis (Docket No. 70) is ALLOWED.

4.  The Motion to Correct Clerical Error in Judgment (Docket No. 62) and the Motion to Correct Judgment for Clerical Error (Docket No. 64) are DENIED.

5.  A COA is DENIED as to all claims. Because the court has denied a COA, petitioner may seek a COA from the Court of Appeals.


UNITED STATES DISTRICT JUDGE